CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
REBECCA M. ABEL (Bar No. 298604)
(E Mail: rebecca_abel@fd.org)
ADEN KAHSSAI (NV Bar No. 15581)
(E-Mail: aden_kahssai@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ALEXANDRIA DEMETRIUS AUGUSTINE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALEXANDRIA AUGUSTINE,<br><br>Defendant. | Case No. 2:25-cr-00678-KS<br><br>**DEFENDANT'S MOTION *IN LIMINE* TO COMPEL GRAND JURY TRANSCRIPTS AND GOVERNMENT WITNESSES' PERSONNEL FILES**<br><br>Hearing Date: October 2, 2025<br>Hearing Time: 11:00 a.m.<br>Location: Courtroom of the Hon. Karen L. Stevenson |

Defendant Alexandria Augustine, through her counsel of record, Aden Kahssai and Rebecca Abel, hereby moves *in limine* to compel the government to disclose the grand jury transcripts and personnel records for the officers and agents involved in this matter.

1

1 | This motion is based upon the attached Memorandum of Points and Authorities,
2 | all files and records in this case, and any further evidence as may be adduced at the
3 | hearing on this motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 1, 2025        By  /s/ Aden Kahssai
                                                ADEN KAHSSAI
                                                REBECCA M. ABEL
                                                Deputy Federal Public Defenders
                                                Attorneys for ALEXANDRA AUGUSTINE

## I. INTRODUCTION

After the complaint was filed, the government attempted to secure a felony indictment by bringing the evidence to the grand jury. The grand jury returned a no bill. The government has informed defense counsel that it will not comment on anything that happened in front of the grand jury and has refused to disclose the transcript of the grand jury proceeding. Witnesses testified before the grand jury and decided to not charge Ms. Augustine, thus that testimony is relevant to Ms. Augustine's defense under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Gigilo v. United States*, 405 U.S. 150 (1972). This is particularly so if testimony to the grand jury will impeach trial witness testimony that differs, even slightly, in its recitation of the evidence, or if grand jurors asked any questions that bear on guilt. The defense requests production of the grand jury transcript. Alternatively, the government should be ordered to disclose the grand jury transcripts to the Court for an in camera inspection to confirm whether they contain any evidence that is required to be produced under Brady, Rule 16, or otherwise. *See Dennis v. United States*, 384 U.S. 855, 874 (1966).

Additionally on September 25, 2025, defense counsel requested the personnel files of all officers or agents involved in this case and anticipated to testify, citing *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1990), which requires, upon request, that the government inspect the personnel files of its law enforcement officer witnesses and turn over impeachment material.[1] With one week remaining before trial, defense counsel has received no response from the government on this matter. In addition, the government's purported *Henthorn* review is insufficient under *Brady* because it includes only a letter from government counsel containing a summary of sustained allegations in his personnel file. It does not include any allegations of misconduct, if unsustained, nor the production

---

[1] In particular, defense seeks personnel files relating to Officers Alexandro Guiterrez (A.G.), Anthony L. Sermons, and Lucas Riley - officers government counsel anticipates calling to testify at trial.

1

of any underlying evidence. Consistent with obligations under *Brady* and *Henthorn*, the defense requests that the government produce for in camera review all evidence of any: (1) criminal arrests, prosecutions, or convictions; and (2) civil or administrative matters such as personnel actions, disciplinary complaints, citizen complaints, hearing transcripts, investigative notes or documents that relate to excessive force, credibility, and/or honesty, including any allegations of excessive force, preparation or approval of false reports, and the giving of false statements or testimony.

Ms. Augustine respectfully requests that the Court compel the government to disclose grand jury transcripts and *Henthorn* materials, as outlined above, to the defense, or to the Court for in camera review.

## II.  BACKGROUND

On July 24, 2025, Ms. Augustine was arrested during a protest against Immigration and Customs Enforcement ("ICE") in downtown Los Angeles. She was initially charged on a Complaint for a violation of 18 U.S.C. § 111(a)(1), assaulting a federal officer. Dkt. 1. After the complaint was filed, the government sought a felony indictment for the assault charge from the grand jury. The grand jury returned a no bill. Subsequently, the Complaint was dismissed and the government filed an Information charging 18 U.S.C. § 111(a)(1), assault on a federal officer, a Class A misdemeanor. Dkt. 17. Seven days before trial, the government added two Class C misdemeanor charges to this case in a Superseding Information for 41 C.F.R. § 102-74.390(c): impeding or disrupting the performance of official duties by government employees and 41 C.F.R. § 102-74.385: failing to comply with official signs and directions.

According to the complaint, FPS officers (including Officer Alexandro Gutierrez) were deployed to direct a group of people that were on federal property back on the sidewalk toward Alameda Street. As the group of FPS officers approached the group of protestors, many of the protestors were yelling at the FPS officers, and some in the group (including one who was later identified as AUGUSTINE) started waving

1 their umbrellas toward the officers. Dkt. 1 ¶ 5(c). The complaint further alleged that as the FPS officers moved the protestors back, Officer Gutierrez approached Ms. Augustine and she extended her umbrella toward him. Then, Officer Gutierrez used his hand to try to move the umbrella away from him and tore the fabric from the umbrella's frame. After Officer Gutierrez tore the fabric off the umbrella's frame, Ms. Augustine threw, and allegedly intentionally assaulted, Officer Gutierrez with the now metal frame of the umbrella on the left shoulder and upper chest area. *Id*. at ¶ 5(d).

Video evidence received from the government does not show the facts alleged in the complaint: that Ms. Augustine extended her umbrella "towards Officer A.G.," that she "threw and intentionally assaulted Officer A.G.," and that the metal frame of the umbrella touched Officer A.G. on the shoulder and upper chest area. Given the contradictory statements, and the fact the grand jury did not return a bill, there is good reason to believe the grand jury transcripts contain evidence favorable to the defense.

In addition, the complaint and the contradictions demonstrate the centrality of Officer Gutierrez' credibility to this case. A fulsome review and production of *Brady* and *Henthorn* materials concerning Officer Gutierrez—and the two other officers testifying in support of Officer Gutierrez—is necessary to ensure Ms. Augustine receives a fair trial. This review must include production of any evidence concerning his credibility, honesty, and use of force. The facts as alleged in the complaint demonstrate that Officer Gutierrez, not Ms. Augustine, was the initial aggressor. He initiated contact with Ms. Augustine—grabbing her umbrella out of her hands and tearing it to shreds. Thus, production of any past allegations of force, or any lies regarding prior uses of force, is a necessity.

3

# III. ARGUMENT

## A. The Court should order production of transcripts of the grand jury proceeding to defense counsel.

Disclosure of grand jury materials under Rule 6(e) is generally permitted upon a defendant's showing of a "particularized need." *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 221-22 (1979); *United States v. Sells Eng'g*, 463 U.S. 418, 442-443 (1983). This showing of "particularized need" requires that the party requesting disclosure show that the material sought is necessary to "avoid possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Id*. at 443.

### 1. The grand jury transcripts include *Brady*/*Giglio* evidence.

The prosecutor in a criminal case must disclose evidence favorable to the accused. The Supreme Court has stated that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. *Brady* also requires the disclosure of evidence impeaching the testimony of a government witness when the reliability of that witness may be determinative of a criminal defendant's guilt or innocence. *See Giglio*, 405 U.S. at 150 (1972). *See also United States v. Bagley*, 473 U.S. 667, 676 (1985).

The mandates of *Brady* and *Giglio* override the requirements of the Jencks Act. *See e.g., Chavis v. State of NC.*, 637 F.2d 213, 223 (4th Cir. 1980) (*Brady* is broader than Jencks and may be violated when government fails to disclose material that otherwise is not discoverable under Jencks); *United States v. Campagnuolo*, 592 F.2d 852, 860 (5th Cir.1979) (stating without deciding that *Brady* would override Jencks Act when failure to order pretrial discovery would result in denial of defendant's due process rights);

*United States v. Tarantino*, 846 F.2d 1384, 1414 n.11 (D.C. Cir. 1988) (government's *Brady* obligations are in no way lessened by the Jencks Act limitations).

The government must make a "reasonable effort" to aid the defense in obtaining favorable evidence and witnesses. *United States v. Henao*, 652 F.2d 591, 592 (5th Cir. 1981); *United States v. Hernandez Gonzalez*, 608 F.2d 1240, 1246 (9th Cir. 1979). Furthermore, the government must disclose *Brady* material at a time that permits the defense to use these materials for trial preparation. *See, e.g., United States v. Elmore*, 423 F.2d 775, 779 (4th Cir. 1970); *United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir. 1985).

Here, no charges were returned against Ms. Augustine by the grand jury, so this raises a valid inference that the grand jury transcripts are unfavorable to the government and favorable to the defense. They, in addition, may impeach trial witnesses if trial witness testimony differs in any respect from the testimony provided to the grand jury. If key witnesses at the grand jury seemed unreliable, inconsistent, or biased, the grand jury could have discounted their testimony in returning a no bill. In this case, which hinges on one alleged victim's word, this is especially relevant to the defenses' ability to impeach that witness. Grand juries rarely ever return a no bill in federal court, so this case in particular suggests that the grand jury may have distrusted the witnesses. If so, this information is critical to Ms. Augustine's trial preparation.

**2.   There is little interest in protecting the secrecy of the grand jury proceedings.**

There is little interest in secrecy at this point in the proceedings. Ordinarily, courts weigh the need for disclosure against the traditional policies underlying grand jury secrecy:

> (1) To prevent the escape of those whose indictment may be contemplated;

5

    (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment of their friends from importuning the grand jurors;

    (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at [t]he trial of those indicted by it;

    (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes;

    (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation

See *U.S. Indus, Inc. v. U.S. Dist. Court for the Southern Dist. of Cal., Central Division*, 345 F.2d 18, 21 (9th Cir. 1965).

  None of those considerations apply here. Ms. Augustine has already been charged via criminal information; there is no further grand jury deliberation to be had. There is no threat of witness intimidation, particularly since the witnesses are law enforcement, not lay persons. Indeed, after a grand jury's investigation has terminated, most of the reasons for grand jury secrecy are no longer applicable and the others are less than compelling.

**B. The Court should order the government to produce witnesses' personnel documents under Rule 16, *Brady*, and *Giglio*.**

  Federal Rule of Criminal Procedure requires that the government provide the defense with all material in the government's possession, custody, or control if the item is material to preparing the defense. Fed. Rule Crim. Proc. 16(a)(1)(e)(i). Evidence is material if it is helpful to the development of a possible defense. *United States v. Budziak*, 697 F.3d 1105, 1111 (9th Cir 2012); *United States v. Olano*, 62 F.3d 1180, 1230. "Any evidence that would tend to call the government's case into doubt is favorable for Brady purposes." *Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013).

6

There can be no dispute that any acts of misconduct—sustained or not—or material in a personnel file that bears on credibility or use of force can be used as impeachment evidence in this matter. *See also Bagley*, 473 U.S. at 676. Furthermore, the Ninth Circuit has already held that, with respect to *Brady* and *Giglio* evidence, the defendant does not have to make an initial showing of materiality in order to access such information. *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984); *United States v. Henthorn*, 931 F.2d 29, 30 (9th Cir. 1990). Thus, if any of the personnel files for law enforcement witnesses in this case contain acts of misconduct or material that bears on credibility, or accusations of use of force, the Constitution (and Rule 16) require that those materials be produced.

Under Rule 16 and *Henthorn*, the defense is entitled to personnel files of government agents and employees whom the government intends to rely on for testimony at a hearing or a trial. *Henthorn*, 931 F.2d at 30-31; *see also Cadet*, 727 F.2d at 1468; Fed. R. Evid. 608(b). Under *Cadet*, the government must disclose material information favorable to the defense. 727 F.2d at 1467-68. If the prosecution is uncertain about the materiality of information within its possession, it may submit the information to the trial court for an in camera inspection and evaluation. *Id*. The government has a duty to examine personnel files upon a defendant's request for their production. *Id*.

Just because a sustained finding was not made does not mean that the evidence is not subject to disclosure. *Brady* encompasses evidence that tends to exculpate and tends to impeach credibility. *See Milke*, 711 F.3d at 1012. It does not require that a sustained finding be made prior to disclosure, and indeed courts have held that *Brady* mandates disclosure of "any complaint, investigation or internal administrative or disciplinary proceeding regardless of whether the complaint or allegation was found to be credible by the agency." *See United States v. Jack*, No. 07-cr-266, 2009 WL 425982, at *2 (E.D. Cal. Feb. 20, 2009); *United States v. Fletes*, 2:23-CR-556-MEMF, Dkt. No. 80 (C.D.

7

Cal. Nov. 12, 2024) (ordering in camera review of testifying officer's personnel files to include (1) criminal arrests or prosecutions and (2) civil or administrative matters concerning allegations of mishandling, destroying, or falsifying evidence, preparation or approval of false reports, and the giving of false statements or testimony); *United States v. Vega*, No. 21-cr-537-FMO, ECF No. 66 at 3-4 (C.D. Cal. May 6, 2023) ("complaints regarding law enforcement conduct are discoverable, regardless of the disposition of the complaints."); *United States v. Johnson*, No. 14-cr-00412-TEH, 2014 WL 6068089, at *10 (N.D. Cal. Nov. 13, 2014) (denying motion to quash state law enforcement personnel records and clarifying "the Court does not agree with the [San Francisco Police Department's] contention that the subpoenaed materials should be limited to sustained findings, as the cases cited by the SFPD relate only to civil proceedings and jury trials, and the Court is not restricted by the Federal Rules of Evidence during a suppression hearing."); *United States v. Kiszewski*, 877 F.2d 210, 215-16 (2d Cir. 1989) (finding error where district court refused to compel disclosure of personnel files even where "the FBI exonerated [the agent] on the first complaint, issued a letter of reprimand on the second and deemed the other allegations unfounded"). Moreover, the Ninth Circuit has clearly stated that to the extent there are doubts as to the Brady value of evidence, in a pretrial posture, those doubts should be resolved "in favor of full disclosure." *United States v. Bundy*, 968 F.3d 1019, 1041 (9th Cir. 2020).

Because Officer Gutierrez' credibility—and the two other testifying officers—are not only relevant, but central, to the defense's trial strategy, any evidence concerning their credibility, honesty and past uses of force must be produced. The defense has no objection, and in fact requests, that the Court conduct an in camera review of the officers' personnel files to determine whether they contain any discoverable information.

## IV. CONCLUSION

For the foregoing reasons, Ms. Augustine requests that the Court compel the government to disclose any impeachment material to the defense. Specifically, Ms. Augustine requests that the Court compel disclosure of the grand jury transcript(s), or alternatively, this Court can order the government to disclose the transcript for this Court's inspection, or issue a protective order authorizing disclosure to defense counsel and the defense team only. In addition, Ms. Augustine requests production, or in camera review, of (1) criminal arrests, prosecutions, or convictions; and (2) civil or administrative matters such as personnel actions, disciplinary complaints, citizen complaints, hearing transcripts, investigative notes or documents that relate to excessive force, credibility, and/or honesty, including any allegations of excessive force, preparation or approval of false reports, and the giving of false statements or testimony, for all of the three testifying officers: Officers Alexandro Guiterrez, Anthony L. Sermons, and Lucas Riley.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 1, 2025         By  /s/ Aden Kahssai
                                    ADEN KAHSSAI
                                    REBECCA M. ABEL
                                    Deputy Federal Public Defenders
                                    Attorneys for ALEXANDRA AUGUSTINE

9