CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
REBECCA M. ABEL (Bar No. 298604)
(E-Mail: rebecca_abel@fd.org)
Aden Kahssai (NV Bar No. 15581)
(E-Mail: Aden_Kahssai@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ALEXANDRIA AUGUSTINE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALEXANDRIA AUGUSTINE,<br><br>Defendant. | Case No. 2:25-cr-00678-KS<br><br>**DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF DR. DAVID MEYER, OR, FOR A DAUBERT HEARING**<br><br>**Hearing Date: October 2, 2025**<br>**Hearing Time: 11:00 a.m.**<br><br>**Honorable Karen L. Stevenson** |

Defendant Alexandra Augustine, by and through her undersigned counsel of record, hereby opposes the government's motion in limine to exclude the testimony of Dr. David Meyer or for a Daubert hearing.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 2, 2025     By  /s/ Rebecca M. Abel
REBECCA M. ABEL
ADEN KAHSSAI
Deputy Federal Public Defenders
Attorneys for ALEXANDRIA AUGUSTINE

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The government moves to exclude the testimony of the defense's properly noticed expert, Dr. David S. Meyer. (Dkt. No. 38.) Dr. Meyer has been a professor at University of California-Irvine since 2004, specializing in protests, social movements, and police response to protests. (Dkt. No. 38-2 at 6-38.) The defense noticed him on the nature and purpose of the protest behind the Roybal building, the tactics used by protestors at the Roybal building to get out their message, the tools used by protestors, including specifically the umbrella, and the police response to active protests, such as the one at the Roybal building. (Dkt. No. 38-2 at 3-4.)

The government offers two bases for exclusion: relevance and Rule 403. (Dkt. No. 28 at 4.) Exclusion of expert testimony should be "the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. Neither are a basis to exclude Dr. Meyer's opinion, as set forth below.

### II. ARGUMENT

**A. Dr. Meyer's opinions are relevant to rebut the government's evidence.**

Each of Dr. Meyer's opinions is directly relevant to evidence the government intends to introduce at trial. The "basic standard of relevance is a liberal one" and imposes only a "minimal requirement" on the proponent of the evidence. *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019). Further, the testimony is admissible if it "will serve to aid the trier of fact" by "provid[ing] information beyond the common knowledge of the trier of fact." *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002).

*First*, the complaint directly references the existence of the protest as context for the alleged assault. (Dkt. No. 1 at 4 ("That group of people appeared to be protesting recent federal immigration enforcement actions in the Los Angeles area, and some of the people within the group carried large umbrellas and flashlights.").) Likewise, Officer Alexandro Gutierrez—the alleged victim—references observing "a large crowd

of approximately 50 to 75 demonstrators on either side of Alameda Street," a group that included Ms. Augustine. (Ex. A at 1.) The defense is entitled to respond to the government witness' uninformed characterization of the nature and purpose of the group in order to explain to the jury the context for the alleged assault. Dr. Meyer's testimony will provide a necessary explanation for why a group had gathered in this particular location and to explain the purpose for their presence. *See United States v. Lopez*, 913 F.3d 807, 825 (9th Cir. 2019) (permitting expert testimony to explain "the type of behavior" exhibited by the defendant that "can be placed in context through expert testimony"). Moreover, expert testimony on a political situation that underlies the facts of a criminal case is regularly admitted. *See,e.g.*, *United States v. Phillips*, No. 22-CR-138 (LJL), 2023 WL 6620146, at *11 (S.D.N.Y. Oct. 10, 2023) ("[C]ourts routinely permit expert testimony on foreign countries' socio-political situations to provide jurors with context on otherwise-unfamiliar situations.").

**Second**, the officers' reports repeatedly discuss the tactics used by the protestors, including writing with chalk on the ground, gathering at the entrances, and carrying umbrellas. (Ex. A at 1.) The officers attempt to paint the protestors as bad actors, accusing them of "ignore[ing] all lawful commands" and "continu[ing] to disobey lawful orders." (Id.) The defense is entitled to respond to these accusations by describing the purpose of the protestors' lawful actions and how they fit into the nature and purpose of the protest.

**Third**, the government intends to offer testimony that the umbrella held by Ms. Augustine--and other protestors--is a weapon. (*See* Ex. A at 1.) Ms. Augustine is entitled to meet that evidence. She is permitted to explain otherwise illogical conduct: carrying an open umbrella when it is not raining. Dr. Meyers will explain that the umbrella has both symbolic and practical purposes in the context of protests. Symbolically, the umbrella signifies dissent against the government and unity among the protestors. Practically, the umbrellas are protective: they shield the protestors from rubber bullets, mace, tear gas, and bring lights. Expert testimony is precisely relevant

3

to explain Ms. Augustine's conduct during the alleged assault—carrying an umbrella—which would otherwise be unfamiliar to the jury. *See Lopez*, 913 F.3d at 823 (expert "testimony can provide juries an understanding of why" defendants "act in ways that appear counterintuitive to a layperson"); *cf. United States v. Figueroa-Lopez*, 125 F.3d 1241, 1245 (9th Cir. 1997) ("[T]he [expert] testimony was necessary to inform the jury of the techniques employed by drug dealers in their illegal trade, techniques with which an ordinary juror would most probably be unfamiliar.").

*Finally*, the government will offer testimony as to the actions of the law enforcement officers, characterizing them as reasonable responses to the protestors. (Ex. A at 1-2.) This includes the weapons they carry, as well as Officer Guttierrez' actions in ripping the umbrella from Ms. Augustine's hands. The officers will describe these actions as necessary to respond to the protestors' allegedly unlawful acts. (Id.) Ms. Augustine is entitled to meet that evidence. It is entitled to explain, through Dr. Meyer, an alternate basis for their actions, to include their desire to dissuade the protestors—including Ms. Augustine—from continuing to protest and to frighten them into silence. This is particularly relevant to Ms. Augustine's self-defense claim, which requires that the defense show that Officer Gutierrez' force was excessive and unlawful. If the force is used for an unlawful purpose—i.e., to silence speech—it is by definition excessive. *See Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990).

The importance of this testimony is aptly revealed by the thorough and recent opinion by Judge Hernan D. Vera in *Los Angeles Press Club v. Noem*, Case No. 2:25-cv-05563-HDV-E, Dkt. No. 55 (C.D. Cal. Sept. 10, 2025) (Exhibit B). In that case, journalists brought an action against the Federal Protective Services ("FPS")—the saw entity that employs all three government witnesses in this case—and other federal law enforcement entities to "enjoin Defendants' excessive use of force" which was exercised in "retaliation for constitutionally protected activities," i.e., their speech. *Id.* at 3. Judge Vera granted a preliminary injunction against FPS, finding that "federal

agents' indiscriminate use of force—targeting journalists standing far from any protest activity, launching scorching-hot tear gas canisters directly at people, and shooting projectiles at protestors attempting to comply with dispersal orders—will undoubtedly chill the media's efforts to cover these public events and protestors seeking to express peacefully their views on national policies." *Id.* Judge Vera expressly found—after citing an "avalanche of evidence"— that "upon encountering any violence—however minor—Defendants indiscriminately targeted in equal measure violent actors and peaceful protestors, journalists, and observers." *Id.* at 32-33. Judge Vera's decision highlights the importance of Dr. Meyer's testimony.[1] The jury is entitled to the defense's expert opinion regarding use of force in response to protest.

**B.     Dr. Meyer's opinion is not within common understanding and knowledge of jurors.**

As the Ninth Circuit has stated, "[w]e must be cautious not to overstate the scope of the average juror's common understanding and knowledge." *Finley*, 301 F.3d at 1013. Lay jurors are unlikely to be familiar with protests, protest tactics and methods, the purposes of an umbrella, and officer responses to protests. While a witness at the protest could testify about some of these facts, "only a trained . . . expert could provide a counterweight to the government's allegations against" Ms. Augustine. *Id.* Moreover, a fellow protestor cannot testify as to the officers' responses to the protestors, which is within the province of an expert. "[C]ase law recognizes the importance of expert testimony when an issue appears to be within the parameters of a layperson's common sense, but in actuality, is beyond their knowledge." *Id.* Dr. Meyer can aid the jury by describing the modus operandi of protests and police response, which the Ninth Circuit has repeatedly affirmed is an appropriate basis for expert opinion. *See United States v. Mejia-Luna*, 562 F.3d 1215, 1219 (9th Cir. 2009) (affirming admission of expert testimony, over relevance and Rule 403 objections, that

---

[1] Of course, Dr. Meyer's testimony will not recite any legal conclusions from that order, or otherwise.

would assist the jury to "understand[] alien smuggling schemes, their operational framework, and Mejia-Luna's particular role as a 'load' driver in the operation"); *United States v. Lopez-Martinez*, 543 F.3d 509, 514-15 (9th Cir.2008) (affirming admission of expert testimony about "the methods and patterns of alien smugglers"); United States v. Johnson, 735 F.2d 1200, 1202 (9th Cir.1984) ("The federal courts uniformly hold" that an expert "may testify as to general practices" of defendants "to establish the defendants' modus operandi."). The government intends to suggest that Ms. Augustine is a member of an group of unlawful actors, and Ms. Augustine is entitled to respond and recharacterize the group of which she is a part, its lawful purpose, and its tactics.

C.  **Dr. Meyer's testimony does not violate Rule 403.**

The defense is cognizant that this trial is narrowly limited to the facts of the assault, impeding, and failure to comply charges. It expects Dr. Meyer's testimony to be no more than 30 minutes, and to hew closely to the facts of this case. At the time of the defense's expert notice, it did not have the benefit of any of the law enforcement officer's statements (which were produced on September 24, 2025), nor of the government's theory at trial. Understanding the narrowness of the government's case, the defense will narrow its expert testimony accordingly, hewing to the above testimony and keeping his opinions limited to the facts of this case.

Such testimony fits within the parameters of Rule 403. The government complains the Dr. Meyer's testimony is prejudicial to it because it does not like what he has to say. For example, the government complains that Dr. Meyer's opinion that umbrellas are a symbol of non-violent protest is "unfairly prejudicial" because it claims "here defendant directly threw one at an officer." (Dkt. No. 38 at 8.) The government is certainly free to probe that on cross examination, but whether Ms. Augustine is guilty is a question for the jury, not for the government. With Dr. Meyer's testimony narrowly tied to the facts of this case, there is no risk it will waste time, confuse and mislead, or cause unfair prejudice.

**D.     No Daubert hearing is required.**

At the pretrial conference, the Court made clear it was not interested in a *Daubert* hearing in this matter.  None is required because the government has not made any objection under the standards articulated in Federal Rule of Evidence 702.  *See Est. of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 464 (9th Cir. 2014), overruled on other grounds by *United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) ("[T]he entire purpose of Daubert" is to "determine[] that the expert meets the threshold established by Rule 702." (internal citations and quotation omitted)).

### III. CONCLUSION

For the foregoing reasons, the defense respectfully requests that the Court deny the government's motion to exclude Dr. Meyer, or in the alternative, for a Daubert hearing and permit Dr. Meyer to testify narrowly as set forth above.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 2, 2025        By  */s/ Rebecca M. Abel*
                                REBECCA M. ABEL
                                ADEN KAHSSAI
                                Deputy Federal Public Defenders
                                Attorneys for ALEXANDRA AUGUSTINE