AMY KARLIN (Bar No. 150016)
Interim Federal Public Defender
REBECCA M. ABEL (Bar No. 298604)
(E-Mail: rebecca_abel@fd.org)
Aden Kahssai (Bar No. 367528)
(E-Mail: Aden_Kahssai@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ALEXANDRIA AUGUSTINE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ALEXANDRIA AUGUSTINE,<br>Defendant. | Case No. 2:25-cr-00678-KS<br>**DEFENDANT'S SENTENCING POSITION**<br>**Honorable Karen L. Stevenson** |

Defendant Alexandria Augustine, by and through her counsels of record, hereby submits her position regarding the appropriate sentence in this matter. Ms. Augustine requests that the Court impose a sentence of (1) credit for time served; (2) the mandatory $5 special assessment and $30 Central Violations Bureau processing fee, for a total monetary obligation of $35; (3) no fine; and (4) no term of probation. This position is based on the attached memorandum of points and authorities, the record and files in this case, and any further evidence or argument the Court may permit at the hearing.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1
II. ARGUMENT .......... 1
A. Five days in federal prison is more than sufficient punishment for this Class C misdemeanor. .......... 1
B. No fine should be imposed. .......... 3
C. Probation of any kind is unwarranted. .......... 4
D. The "Special Condition" is unconstitutional. .......... 5
III. CONCLUSION .......... 10

## I. INTRODUCTION

Alexandria Augustine spent five days in the Metropolitan Detention Center for briefly entering a federal loading dock during a protest — a Class C misdemeanor carrying a thirty-day statutory maximum. She has no criminal history before or since, has been steadily employed as a certified behavioral therapist since high school, and has spent years volunteering in her community. On multiple occasions before her arrest, she personally helped federal officers move fellow protestors off the same property — a fact this Court credited in its findings.[1]

The government now asks this Court to add a $500 fine and a year of unsupervised probation — including a special condition barring Ms. Augustine from a broad swath of federal, state, and local buildings across the Central District — on top of the five days she has already served. Neither request finds support in the record or in any purpose of sentencing under 18 U.S.C. § 3553(a). Ms. Augustine respectfully requests a sentence of time served, the $35 in mandatory fees, no fine, and no probation.

## II.ARGUMENT

### A. Five days in federal prison is more than sufficient punishment for this Class C misdemeanor.

Ms. Augustine was in federal custody at MDC for 5 days from July 24, 2025 until her initial appearance on July 28, 2025. (Dkt. Nos. 5, 6.) Aside from this time, Ms. Augustine has never served a single day in custody. She has no criminal history of any kind. This case is her only interaction with the criminal justice system.

A 5-day sentence in custody is more than sufficient to punish Ms. Augustine for her conduct here: a class C misdemeanor for running 5-10 feet on to federal property for less than 5 seconds. If Ms. Augustine had not been detained for those 5 days, it

[1] In filing this position, the defense does not concede guilt on the offense of conviction and intends to preserve her right to appeal the conviction, including all erroneous facts and improper statements of law in the Court's order. (Dkt. No. 155.)

seems clear that no one would have sought a custodial sentence in this case.[2] The fact that she has served such time must be considered in fashioning the appropriate sentence.

Ms. Augustine is 25 years old. She works as a certified, school behavioral therapist for a 7 year old child with autism. She has been steadily employed as a behavioral therapist or as a nanny since graduating high school at age 18. Aside from her work, service is central to Ms. Augustine's life. She is committed to volunteering in her community, working at soup kitchens and pantries, distributing school supplies, and organizing fundraisers. As Ms. Augustine testified at trial, "activism has always been a part of my life." (Apr. 15, 2026 Tr. at 30.)

Ms. Augustine's incarceration was embarrassing and traumatizing. It served to deter her from returning to protest at the Roybal building—she has not protested there in over a year. It also served to punish her; she was forced to wear the same underwear for five days, she was ridiculed an humiliated by the officers and guards, and she had no contact with anyone outside of custody.

Five days of incarceration is also disproportionate to the crime. While lawful directions must be followed, Ms. Augustine's conduct caused no injury, no property damage, no loss, and no need for restitution. In its position paper, the government repeatedly references conduct that the jury acquitted. The Court should not use the acquitted allegations as justification for increasing the sentence on the petty offense. *Cf.* U.S.S.G. § 1B1.3(c) (federally acquitted conduct is excluded from relevant conduct used to calculate a Guidelines range).

As applicable to the offense of conviction, this Court found that on multiple occasions before July 24, 2025, Ms. Augustine voluntarily helped officers move fellow protestors off of federal property to avoid citation or arrest. (Dkt. 155 at 6.) That

---

[2] In a nearly identical case where the client was served with a citation, rather than arrested, the government sought no custody time. *See United States v. Sosa*, Case No. 2:25-PO-1552-MAR, Dkt. No. 42.

record of cooperation — credited by this Court — is inconsistent with the government's implicit characterization of Ms. Augustine as defiant or as posing an ongoing risk to the community.

No further punishment is warranted. For her conduct, Ms. Augustine faced a federal prosecution lasting more than a year, a four-day jury trial, a separate two-day bench trial, months of pretrial supervision, and a federal misdemeanor conviction. The purposes of sentencing under § 3553(a)(2) — just punishment, deterrence, and protection of the public — have already been substantially served. The arrest, prosecution, conviction, and five days of jail time are more than a sufficient sanction for the minor conduct charged in this case. Any further sanction—such as 1 year of probation, or $500 fine, suggested by the government—are unnecessary.

**B. No fine should be imposed.**

The government requests a $500 fine. In determining whether to impose a fine, the Court must consider Ms. Augustine's income and financial resources, the burden the fine would impose upon her, any loss caused by the offense, any restitution or ill-gotten gains, and the cost to the government of imprisonment, supervised release, or probation. 18 U.S.C. § 3572(a). The government addressed none of these factors.

Ms. Augustine does not have the funds to pay a $500 fine, and a financial punishment in that amount would place a substantial burden on her. As a certified behavioral therapist, Ms. Augustine earns $30 per hour pre-tax and works approximately 32 hours a week. Her rent is $2,000 per month, and she also pays for medical insurance at $300 per month, car payment at $250 per month, utilities at approximately $200 per month, and approximately $500 for food each month. She does not have a savings she could use to pay a fine. Given Ms. Augustine's income and expenses, she does not have the financial resources to pay a fine. A $500 payment would place a substantial burden on her ability to pay her rent and feed herself. Because there is no loss, restitution, or ill-gotten gains, the government cannot justify

its request for a fine. To the extent there were any costs in incarcerating Ms. Augustine for 5 days, those are not costs that should be borne by Ms. Augustine as she was immediately granted bail (Dkt. No. 4) and should not have served any days in custody.

Considering all the factors in § 3572, it is clear that no fine is appropriate in this case.

**C. Probation of any kind is unwarranted.**

In addition to the 5 days in jail, the government also seeks a sentence of one year of unsupervised probation. A year of probation is unnecessary for a single, completed Class C misdemeanor conviction where nothing in the record suggests an ongoing risk to the community. Even where a court styles probation as "unsupervised," it nonetheless imports the mandatory conditions of 18 U.S.C. § 3563(a) — including conditions regarding new offenses, controlled substances, and reporting obligations— none of which serves any purpose here beyond the conviction and sentence already imposed. (Dkt. No. 158-1 at 6-7.)

Although the guidelines are not controlling on this case, they are persuasive authority and they no longer recommend that the Court reflexively impose supervision. Instead, a term of supervision should only be imposed "when warranted by an individualized assessment of the need for supervision," U.S.S.G. § 5D1.1(b), and a consideration of the factors in 18 U.S.C. § 3553(a). U.S.S.G. § 5B1.1 n.3. Ms. Augustine has demonstrated both before and since the incident in this case that she has no trouble abiding by the law and poses no risk to herself or to society. Although she has been a consistent activist and organizer since 2020, she has never been charged or convicted of any crime other than the instant offense. Moreover, Ms. Augustine is a contributing member of society, with stable employment, stable residence, and no substance issues. She does not need the assistance of the probation office or the Court to remain an upstanding member of the community.

**D. The "Special Condition" is unconstitutional.**

The true purpose of the government's request for unsupervised probation is to impose a "special condition" on probation that limits Ms. Augustine's freedom of petition and assembly and her due process rights. The constitutional issues with the requested condition are numerous.

While sentencing courts enjoy discretion in setting conditions of probation and supervised release, appellate courts carefully review conditions implicating a defendant's First Amendment rights. *United States v. Hall*, 912 F.3d 1224, 1226 (9th Cir. 2019). "[T]he First Amendment, subject only to narrow and well-understood exceptions, does not countenance governmental control over the content of messages expressed by private individuals." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 641 (1994). Further, a condition "violates due process of law if it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Soltero*, 510 F.3d 858, 866 (9th Cir. 2007).

Where a condition infringes a fundamental liberty interest, the Ninth Circuit requires an "enhanced procedure": the court must make individualized findings, supported by evidence in the record, that the condition is necessary for deterrence, protection of the public, or rehabilitation, and that it is narrowly tailored to burden no more liberty than necessary. *United States v. Wolf Child*, 699 F.3d 1082, 1091–92 (9th Cir. 2012) (vacating a condition restricting familial association because the district court made no individualized findings connecting the restriction to the defendant's actual conduct).

The government admits that the condition it seeks imposes a restraint on Ms. Augustine's right to free speech, right to protest, and right to assemble. A time, place, or manner restriction must be "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Comite de*

*Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 940 (9th Cir. 2011) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). "[I]f conditions are drawn so broadly that they unnecessarily restrict otherwise lawful activities they are impermissible." *United States v. Terrigno*, 838 F.2d 371, 374 (9th Cir. 1988) (internal citations omitted).

The proposed condition sweeps far beyond the offense conduct: it bars her from four separate federal buildings, one state courthouse, and from every Department of Homeland Security immigration-related facility "used on a permanent basis" anywhere in the Central District of California.

Throughout its position paper, the government repeatedly claims that the condition only restricts Ms. Augustine from coming close to buildings at or "near where the offense conduct occurred." (Dkt. No. 158 at 5; *id.* ("same or nearby federal properties").) The condition is not so limited; it reaches:

- five named federal buildings across downtown Los Angeles, only one of which (Roybal) has any connection to the offense
- "[a]ny facility within the Central District of California used on a permanent basis as a workspace by employees of" DHS, ICE, USCIS, and Border Patrol
- Coming within 100 yards of these buildings including foot traffic on public sidewalks merely "adjacent" to these buildings, not just entry onto federal property itself
- These facilities are found throughout the district and are nowhere near the Roybal apron.

In addition to the identified buildings, Ms. Augustine would technically be in violation of her probation for approaching the Los Angeles City Hall, the Los Angeles County Sheriff's Department headquarters, the Los Angeles County District Attorney's Office, the Stanley Mosk Courthouse and the Clara Shortridge Foltz Criminal Justice Center—

all of which are within 100 yards of the identified buildings. This would severely burden Ms. Augustine's First Amendment rights. That is a substantial mismatch between the offense (one non-violent entry onto the apron) and the remedy (a district-wide, year-long exclusion from an entire category of federal facility and those nearby).

It also violates every aspect of due process. Per the government, the condition can result in the probationer being "immediately" taken into custody by any federal law enforcement officer who witnesses the violation, with no probation officer involved to make a threshold determination. (Dkt. No. 158-1 at 9.) Applied here, that means any ICE, CBP, or FPS officer would be determining independently in the field whether a violation occurred. But the condition is so vague that it fails to provide a law enforcement officer, let alone Ms. Augustine, with what conduct is prohibited.

The condition fails to define "official business," leaving Ms. Augustine, law enforcement officers, and this Court with no indication of when and for what purpose she can go to these buildings—one of which is a state courthouse. Can she meet with her defense counsel at the First Street Courthouse? Can she seek a domestic violence restraining order from a state judge in the Spring Street Courthouse? The condition gives no guidance and thus on its face is vague, overbroad, and a violation of due process.

It also has no mens rea requirement. Under the proposed condition, Ms. Augustine is held to strict liability and is in violation even if she gets too close to building in this district that is "used on a permanent basis as a workspace by employees" of DHS, ICE, USCIS, or Border Patrol, even if she has no idea that the building houses such workers. The condition does not identify these buildings or require that Ms. Augustine know of their use prior to coming within 100 yards and thus it fails to give fair notice of exactly what is prohibited. Can she go to the airport? Can she take a cruise leaving from the Port of Los Angeles? Can she drive to Mexico? Again, the condition gives no guidance and is a violation of due process.

The requested condition is grounded in impermissible viewpoint discrimination and is content-specific. A regulation is content-based — regardless of the government's benign motive — if it "applies to particular speech because of the topic discussed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015). The condition here does not bar Ms. Augustine from federal buildings generally; it specifically targets buildings that handle immigration matters. The government's sentencing position paper makes clear the stay-away order is meant to punish Ms. Augustine by preventing her from protesting the government's immigration enforcement policies. It writes:

> The additional condition that defendant stay away from federal facilities involved in the administration of federal immigration law specifically targets the apparent subject of defendant's ire.

(Dkt. No. 158 at 5.) The government could not be more explicit that the primary reason for the stay-away order is to burden Ms. Augustine's First Amendment rights to freedom of speech, freedom of assembly and freedom to petition the government because the government does not like Ms. Augustine's anti-ICE message. A restriction defined by reference to which agency's mission the speaker was protesting is a restriction defined by content. The government has not justified why a defendant convicted of a single non-violent trespass must be barred from an entire category of facility selected because of the subject-matter of her speech. The government seems to have forgotten our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. at 270.

The government's citation to *United States v. Etienne* is entirely misplaced. 102 F.4th 1139, 1146 (11th Cir. 2024). In *Etienne*, the defendant was convicted for "threatening to assault and murder a United States judge with intent to retaliate against the judge on account of the performance of official duties" in violation of 18 U.S.C. § 115(a)(1)(B) and threatening to kill the judge's courtroom deputy, also in violation of

18 U.S.C. § 115(a)(1)(B). *Id.* at 1143. 18 U.S.C. § 115(a)(1)(B), is a Class C Felony carrying a maximum term of imprisonment of 10 years. In *Etienne*, the district court ordered the defendant to "stay away from the federal courthouses located in Fort Pierce and West Palm Beach, as well the King Building [in Miami]," and ordered him "not call any judges or any court facilities." *Id.* The 11th Circuit upheld the stay-away order, reasoning the condition "was narrowly tailored to protect the victims of his crimes and to address the serious conduct underlying his sentence: threats that he made on the lives of a federal magistrate judge and federal employees" and that the order "does not restrict Etienne more than is reasonably necessary to fulfill the statutory purposes of punishment." *Id.* at 1148.

The stay-away order proposed by the government in this case, in which the defendant was convicted of briefly entered a driveway, is significantly broader than the order in *Etienne*, where the defendant threatened to kill a federal judge and federal employees. In the present case, the stay-away order restricts Ms. Augustine significantly more than is necessary given that Ms. Augustine's conduct posed no risk to anyone. Here, the government does not even attempt to articulate how the proposed stay-away order protects anyone, which is the central justification for stay-away orders in almost all other contexts. Unlike the *Etienne* stay-away order, the proposed stay-away order serves no point but to prevent Ms. Augustine from peacefully and civilly exercising her First Amendment rights.

The government fails to note that a fellow magistrate judge in this District, the Honorable Margo A. Rocconi, rejected the government's attempt to impose an identical condition in a nearly identical case. *See United States v. Sosa*, Case No. 2:25-PO-1552-MAR, Dkt. Nos. 42, 53 (Aug. 19, 2026). Mr. Sosa, like Ms. Augustine, was convicted of a single violation of 41 C.F.R. § 102-74.385 for failing to comply with a lawful direction when he entered onto the apron behind the Roybal building. According to the government's sentencing position in that case, Mr. Sosa "crossed the sidewalk on

Alameda Street, passed the erected fenceline, and entered onto the federal property in the Roybal Apron area in contravention of FPS's LRAD admonitions." *Id.*, Dkt. No. 42 at 4. He was immediately detained, issued a citation, and released. *Id.*

At sentencing, the government sought one year of unsupervised probation with an identical "special condition" to the one here. *Id.* at 3-4. Although Mr. Sosa represented himself at trial, the Court was concerned with "the potential constitutional issues that may be implicated by the imposition of a sentence including a keep-away order," and it appointed the Office of the Federal Public Defender to represent him as advisory counsel at sentencing. *Id.*, Dkt. No. 35. After briefing of the issue and a sentencing hearing, Judge Rocconi declined to apply the "special condition" in Mr. Sosa's case, finding it burdened several constitutional rights. *Id.*, Dkt. No. 54.

Like Judge Rocconi, this Court should similarly refuse to impose the Special Condition because it infringes on Ms. Augustine's First Amendment and Due Process rights.

## III.CONCLUSION

For the foregoing reasons, Ms. Augustine respectfully requests that the Court impose a sentence of credit for time served, the mandatory $5 special assessment and $30 CVB processing fee, no fine, and no term of probation.

Respectfully submitted,

AMY KARLIN
Interim Federal Public Defender

DATED: September 14, 2026 By */s/ Rebecca M. Abel*

REBECCA M. ABEL
ADEN KAHSSAI
Deputy Federal Public Defenders
Attorneys for ALEXANDRIA AUGUSTINE